UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA,   :   S12 94 Cr. 313 (CSH)
:
:MEMORANDUM OPINION
        -against-           :AND ORDER
:
IVAN RODRIGUEZ,             :
:
              Defendants.   :
------------------------------------------------------------ x

HAIGHT, Senior District Judge:

By Summary Ivan Rodriguez has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct a sentence imposed upon him by this Court following Rodriguez's conviction after a jury trial on charges of conspiracy to commit murder, murder, and the use of a firearm in furtherance of those crimes. The motion was originally assigned to Judge Stein and then transferred to this Court as the one that imposed Rodriguez's sentence.

The government, opposing Rodriguez's motion, contends that it is untimely and, in the alternative, without merit. For the reasons that follow, the Court denies the motion.

**I. Background**

The jury trial resulting in the conviction of Rodriguez and his co-defendant, Angel Padilla, lasted for twelve weeks. On May 16, 1995, the jury returned its verdict finding both defendants guilty of all the charges against them.

On direct appeal, the Second Circuit affirmed the convictions of both Padilla and Rodriguez in a single opinion, having heard both appeals together. *United States v. Padilla*, 203 F.3d 156 (2d Cir. 2000); *see also United States v. Padilla* 205 F.3d 1326 (Table), 2000 WL 234427 (2d Cir. Feb.

7, 2000) (unpublished opinion). Although the present motion is made only on behalf of Rodriguez, I will for reasons that appear *infra* discuss the contentions made on appeal by both Rodriguez and Padilla, and the Second Circuit's dispositions of those contentions.

This Court sentenced Rodriguez principally to a term of life in prison, followed by the mandatory consecutive five-year term for the gun violation. The Second Circuit affirmed Rodriguez's judgment of conviction in its published opinion on March 3, 2000. Rodriguez's conviction became final ninety days later, on May 8, 2000, when his time for filing a petition of certiorari with the Supreme Court expired. *See Clay v. United States*, 537 U.S. 522, 524-25 (2003).[1]

## II. Timeliness

The Antiterrorism and Effective Death Penalty Act of 1966 (AEDPA) established a one-year limitation period on the filing of § 2255 motions which begins to run on the day the defendant's conviction becomes final. In Rodriguez's case, as noted in Part I, that day was May 8, 2000. Accordingly, the AEDPA required Rodriguez to file the present motion not later than May 8, 2001. But Rodriguez did not file the motion until January 17, 2006. In consequence, the motion must be dismissed as untimely under the statute unless, as Rodriguez contends and the government denies, Rodriguez can successfully invoke the doctrine of equitable estoppel.

"The Second Circuit has taken the position that the AEDPA's one-year statute of limitations is not a jurisdictional bar and is therefore subject to equitable tolling." *Padilla*, 2002 WL 31571733, at *1 (citing *Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001)). *See also Smith v. McGinnis*,

---

[1] Rodriguez did not file a petition for certiorari. His co-defendant, Padilla, did so. Padilla's conviction became final on October 2, 2000, when the Supreme Court denied his petition. Padilla filed a § 2255 motion on January 22, 2002. I denied it as untimely. *Padilla v. United States*, 2002 WL 31571733 (.S.N.Y. Nov. 19, 2002).

2

208 F.3d 13, 17 (2d Cir. 2000) ("[O]ther circuits considering this issue uniformly have held that the [AEDPA] one-year period is a statute of llmitations rather than a jurisdictional bar so that courts may equitably toll the period. We join our sister circuits and also adopt this rule.") (citations omitted).

"Equitable tolling applies only in the rare and exceptional circumstance. In order to equitably toll the one-year period of limitations, [a petitioner] must show that extraordinary circumstances prevented him from filing his petition on time." *Smith*, 208 F.3d at 17.[2] The circumstance that Rodriguez relies upon for equitable tolling is his inability while incarcerated to obtain and make use of his legal papers and files. The particulars are described in ¶¶ 11(d) and 13 of Rodriguez's motion.

¶ 11(d) reads:

> I also had a New York State conviction and sentence of life imprisonment, which I served and paroled from in 2004. During my transfers from the Federal Bureau of Prisons to the New York State DOC my legal paperwork was either misplaced, lost and/or destroyed so I was unable to timely file any postconviction attack motions.

¶ 13 reads:

> I was in service of a New York State conviction and sentence of life imprisonment, and during my transfer[s] between the Federal Bureau of Prisons and the New York State DOC all of my legal paperwork was either misplaced, lost, and/or destroyed leaving me unable to file any postconviction attack motions on my federal sentence.

Apparently Rodriguez has never been able to obtain his legal papers; his reply brief on the present motion refers to

---

[2] *Smith v. McGinnis* involved a petition in a federal district court by an individual held in state custody for a writ of habeas corpus. The relevant sections of 28 U.S.C. call such individuals "petitioners" and their proceedings "petitions." Rodriguez is held in federal custody. The section of the statute relevant to him, 28 U.S.C. §2255, refers to his proceeding as a "motion," which makes Rodriguez a "movant," and those are the terms I use in text. The one-year AEDPA statute of limitations is the same for both sorts of proceeding.

> the undisputed fact that Petitioner's legal personal paperwork necessary for the timely filing of a § 2255 motion were literally and figuratively confiscated by either State of New York prison officials and/or Federal Bureau of Prison officials, to wit: that until this present day Petitioner has never been afforded access to the aforesaid personal legal papers in any manner whatsoever.

Reply Brief at 2.[3] These circumstances, Rodriguez contends, are sufficient to trigger equitable tolling of AEDPA's one-year statute of limitations, thereby rendering his present motion timely.

*Valverde v. Stinson*, 224 F.3d 129 (2d Cir. 2000), is the leading Second Circuit case on the unavalability of legal papers as an "extraodinary circumstance" justifying equitable tolling of the one-year AEDPA statute of limitations. In *Valverde* the state inmate, who filed his habeas petition more than a year after his conviction became final, contended before the district court that "he was prevented from filing on time by a correction officer's confiscation of his legal papers, including his hand-written habeas corpus petition." 224 F.3d at 132. The district court, in dismissing the petition as untimely, failed to address that argument. The court of appeals granted Valverde a certificate of appealability "for the limited purpose of determining whether equitable tolling might be warranted in light of the confiscation of his legal papers," *id*. at 133, and remanded the case to the district court "with instructions for it to develop further facts relevant to the petitioner's claim that he was prevented from filing his petition on time by the wrongful confication of his petition and legal papers." *Id*. at 136-37.

During the course of its discussion in *Valverde*, the Second Circuit said that "[t]he *intentional*

---

[3] Rodriguez states throughout his submissions, as he has done in prior letters to the Court, that his ability to speak, read or write English is very limited (his native language is Spanish). It is apparent that Rodriguez, as frequently occurs with non-English-speaking inmates, is receiving the assistance of an individual proficient in English in preparing the papers on this motion. But that furnishes no basis for doubting the factual accuracy of what is said, and I accept on this motion that Rodriguez has never been able to obtain the legal papers relevant to his case.

4

confiscation of a prisoner's habeas corpus petition and related legal papers by a corrections officer is 'extraordinary' as a matter of law." 224 F.3d at 133 (citation omitted) (emphasis added). Several district courts in this circuit have concluded from that language that "[t]he *negligent* loss of legal papers by prison officials . . . does not constitute an extraordinary circumstance," and accordingly "does not entitle [a habeas] petitioner to equitable tolling." *Cross v. McGinnis*, No. 05 Civ. 504, 2006 WL 1788955 S.D.N.Y. June 28, 2006) (Crotty, *J.*), at *5 (citing cases) (emphasis added). The Second Circuit does not appear to have squarely addressed the difference, if any, in the effect upon equitable tolling of a prison official's negligent loss of a prisoner's legal papers as opposed to an intentional confiscation, where in either case the prisoner himself played no part in and had no responsibility for the documents' disappearance.

If the timeliness of Rodriguez's motion depended upon whether prison officials intentionally confiscated his legal papers instead of negligently losing them, there would have to be an evidentiary hearing, since Rodriguez does not know what happened to his files. All he can say is that "my legal paperwork was either misplaced, lost and/or destroyed." But there is no need for a hearing because, even assuming that prison officials intentionally (and wrongfully) confiscated and destroyed Rodriguez's legal papers, Rodriguez cannot satisfy the second requirement for equitable tolling articulated by the Second Circuit in *Valverde* and other cases.

In *Valverde* the Second Circuit stressed that "a habeas petitioner seeking equitable tolling must show that extraordinary circumstances prevented him from filing his petition on time." 224 F.3d at 133 (citation and internal quotation marks omitted). The *Valverde* court was prepared to assume that the "extraordinary circumstance" of a prison official's intentional confiscation of the petitioner's legal papers had occurred; nonetheless, to invoke equitable tolling a petitioner or movant

5

must make an additional showing. On that score, the Second Circuit said in *Valverde*:

> But assuming that these extraordinary circumstances occurred, preventing the petitioner from filing his petition for some length of time, we must still determine whether they prevented him from filing his petition *on time*. The word "prevent" requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances. If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation beteen the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.

*Id*. at 134 (citations and internal quotation marks omitted; emphasis in original).

In determining whether that causal link is broken in the case at bar, it is appropriate to consider the particular grounds Rodriguez asserts for § 2255 relief. That analysis will reveal whether Rodriguez, acting with reasonable diligence, could have filed *this motion* asserting *those claims* on time, notwithstanding a wrongful confiscation of his legal papers by prison officials.

The claims Rodriguez asserts will be further considered in Part III, *infra*, but for present purposes it is sufficient to note that Rodriguez's motion, as amplified by his main brief, advances five grounds. The first claim is that Rodriguez "was physically, mentally and medically incompetent to stand trial for the charged offenses against him." Motion at ¶ 12.A. This claim is seemingly narrowed by the brief at 1: "Petitioner contends that he was medically, due to his ongoing physical disabilities, incompetent to stand trial," and, "as a result of his having suffered several strokes and one heart attack prior to, during, and throughout the legal proceedings complained of herein, was absolutely unable to aid and assist his defense counsel in his defense preparation, research,

investigation, and alibi witness location, et cetera." Thus the brief does not urge a contention that Rodriquez was *mentally* incompetent to stand trial.

There is no discernible basis for concluding the the unavailability of Rodriguez's legal papers prevented him from filing a timely motion based upon his asserted medical incompetence to stand trial. The proof of a disabling condition would logically be found in Rodriguez's personal account of his disabilities at the pertinent times, supported by medical rather than by legal files; and indeed Rodriguez, in support of his present motion, submits medical records generated by federal and state prison facilties.

Three of Rodriguez's claims, alleging violation of Fifth Amendment and Sixth Amendment rights, criticizing the conduct of the prosecutors and the trial judge, and challenging the effectiveness of his counsel's assistance, have at their core an incident occurring during trial whose nature and sequelae are described by the Second Circuit in its opinion on direct appeal, 203 F.3d at 158-161, familiarity with which is assumed. I need not recount them here. The circumstances generated by that incident and this Court's actions in response to them (which the Second Circuit approved) were fully known by Rodriguez and all concerned by the end of the trial. There is no basis for suggesting that the unavailability of Rodriguez's court papers prevented him from attempting to revisit those issues in a timely § 2255 motion.

Lastly, Rodriguez asserts as a ground for relief "the judicial bias" of the trial judge as revealed by the transcript "from the motions hearing held on January 11, 1995." Motion, ¶ 12.B. His brief at 2 does not shed any light on this claim; it simply says: "Petitioner contends herein that the aformentioned 'Hearing Transcript, dated January 11, 1995,' speaks for itself regarding this claim as raised." No transcript is submitted in support of the motion. The government says in its

7

letter brief in opposition at 4 n. 2: "According to the docket, Judge Haight denied Rodriguez's motion for a new counsel on that date. However, the Government has been informed that a transcript was not created for that conference, which may explain the ambiguous nature of Rodriguez's claim." I read that with some surprise, since I follow the general practice of having every conference and hearing in a criminal case transcribed. The Court's files contain a letter to the Court from Rodriguez received in chambers on January 10, 1995, expressing dissatisfaction with his assigned counsel, Edward M. Kratt, Esq., and asking for the assignment of another lawyer. The hearing on the following day responded to that request, which was denied owing to the proximity of the trial and the manifest competence of Mr. Kratt. Rodriguez was fully aware of his expressed desire for another attorney and the Court's rejection of his request. The unavailability of his legal papers, for whatever reason, did not prevent him from raising this claim in a timely § 2255 motion.

It follows that, even if prison officials by their intentional confiscation of Rodriguez's legal papers created an "extraordinary circumstance," that circumstance did not and could not have prevented Rodriguez from asserting his present claims in a timely filed motion. Therefore equitable tolling is not available to Rodriguez. His motion is dismissed as untimely.

### III. Merits

Even if, contrary to the conclusion reached in Part II, Rodriguez's motion should be regarded as timely under AEDPA, all the claims he asserts are lacking in merit.

First, Rodriguez is procedurally barred from using a § 2255 motion "to relitigate questions which were raised and considered on direct appeal." *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (citations and internal quotation marks omitted). Second, "where a petitioner does not bring a claim on direct appeal, he is barred from raising the claim in a subsequent § 2255 proceeding

unless he can establish both cause for the procedural default and actual prejudice resulting therefrom." *Unites States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998) (citations and internal quotation marks omitted). The second principle is subject to the important exception that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).

These familiar rules dispose of most of Rodriguez's claims that focus upon the government's mid-trial witness and jury tampering investigation, this Court's temporary withholding of the results of that investigation from defense counsel and the Court's order to defense counsel not to reveal the fact of the investigation to the defendants, Rodriguez and Padilla. *See* the Second Circuit's summary of these events, 203 F.3d at 158-59. A week before the defense case was expected to begin, this Court "ordered the government to reveal to defense counsel the results of the investigation" and "simultaneously lifted the restrictions on defense counsels' communications with their clients." *Id*. at 159. On direct appeal, the Second Circuit said, "Padilla and Rodriguez both argue that the district court's order precluding counsel during the trial from revealing to their clients the allegations and subsdequent investigation of witness and jury tampering violated their Sixth Amendment right to counsel. Padilla also claims that his Fifth Amendment due process rights were violated by restricting his communication with his attorney." *Id*. The Second Circuit rejected all these arguments, concluding that this Court "followed a prudent course that was attentive to the defendants' right to present their defenses while protective of the integrity of the trial process." *Id*. at 160.

The brief in support of Rodriguez's present motion argues at 2 that his "Sixth Amendment right to the effective assistance of counsel was seriously implicated" when the district court "ordered

9

Petitioner's defense counsel during Petitioner's trial proceedings not to reveal to Petitioner an ongoing investigation into jury tampering and witness tampering." A related claim is made that this Court's "order to the Petioner's counsel during trial" denied Rodriguez "the due process of law protection as mandated by the Fifth Amendment," as well as implicating his "Sixth Amendment rights." *Id*. Rodriguez's Sixth Amendment claim on this motion is procedurally barred because it was rejected on direct appeal. While Rodriguez did not assert a Fifth Amendment claim on direct appeal, he could have done so, and so is procedurally defaulted from doing so on this § 2255 motion, no showing having been made of a sufficient cause for the failure or actual prejudice resulting from it. Moreover, a Fifth Amendment claim clearly lacks substantive merit; Padilla asserted that claim and the Second Circuit rejected it on direct appeal.

Rodriguez's motion claims at ¶ 12.D. that following this Court's order temporarily barring communications between defense counsel and the defendants under the circumstances described above, "Petitioner's trial counsel should have pursued the legal matters on Petitioner's behalf despite the Government and the Trial Court Judge's opposition." Construing this claim as one of ineffective assistance of counsel, *Massaro* holds that it is not procedurally defaulted by Rodriguez's failure to raise it on direct appeal, but there is a manifest lack of substantive merit in a claim that counsel should have continued to argue, or perhaps even disobey, an order by the district court subsequently held by the court of appeals to have been entirely proper.

There is also a claim on the present motion that the government's investigation of the mid-trial jury and witness tampering incidents constituted an impermissible "fishing expedition" before the grand jury, in violation of the Fifth and Sixth Amendments. Brief at 2. Again, these claims could have been raised on direct appeal and accordingly are procedurally defaulted. Indeed, Padilla

10

argued on direct appeal that the government's investigation led to evidence which was improperly admitted at trial as probative of consciousness of guilt on the underlying charges, an argument that the Second Circuit rejected, 203 F.3d at 161-62, and so there is no merit to Rodriguez's present claim.

Lastly, Rodriguez's claim that he was physically or mentally incompetent to participate in the trial could have been raised on direct appeal and is therefore procedurally defaulted. In any event, there is no substantive merit to the claim.

Any claim of mental incapacity, suggested in Rodriguez's motion but apparently abandoned in his brief, is unsupported by any medical evidence; moreover, the Probation Department's Presentence Investigation Report ("PSR") on Rodriguez, dated May 15, 1998, recites at ¶ 96 that Rodriguez stated through an interpreter to the Probation Officer that "he has no history of mental or emotional health problems and no history of treatment for such problems."

As for Rodriguez's physical condition, the PSR recites at ¶¶ 93 that Rodriguez stated "he has had three strokes in the past; two occurring in September and October of 1993, and one in April 1994, which reportedly occurred while the defendant was incarcerated." By that account, the most recent stroke was about a year before the trial, the jury having convicted Rodriguez on May 16, 1995. ¶ 95 of the PSR recites Rodriguez's statement that "he also suffers from a heart condition" causing a "weak pulse" which was successfully treated at the Westchester Couny Hospital in July 1997.

These accounts in the PSR are for the most part consistent with three medical records Rodriguez attaches to his brief on the present motion. The first two, apparently generated while Rodriguez was in federal custody, are dated July 15, 1997. They contain notations reading "stroke x3 heart atack x1" and "stroke left side 1994," "heart attack." The "clinical observations" recorded

on the first of these records describe Rodriguez's "Level of Consciouusness" as "Alert" and "Oriented: time, place, person." His "Behavior/Conduct" is described as "Calm," "Cooperative," and "Non-Violent." The third of these medical records, apparently generated at a later date by New York State correctional health services, contains notations of "CVA x2 1993" (presumably cardiovascular accident or stroke) and "MI (presumably myocardial infarction or heart attack) 1994."

There is nothing in this record to suggest that Rodriguez was incapacitated or incompetent in any way to participate in the trial in 1995, including communicating with his attorney. As the government notes in its letter brief at 7, on April 4, 1995, during the trial, counsel for Rodriguez conveyed to the Court his client's concern about his health, including the history of strokes, and the Court alerted the MCC authorities to that concern. But Rodriguez's attorney, an experienced and able advocate, never expressed concern of his own about Rodriguez's competence; counsel never advised that he was having difficulty understanding Rodriguez or making himself understood to him; the Court never observed any indication of physical or mental difficulty on the part of Rodriguez (except that he walks with a limp); and Rodriguez was in daily and seemingly alert attendance during the course of a gruelling twelve-week trial. There is, in short, no substance to Rodriguez's claim of incompetence to stand trial.

### IV. Conclusion

For the foregoing reasons, Rodriguez's motion for relief under 28 U.S.C. § 2255 is denied as barred by the AEDPA's one-year statute of limitations.

In the alternative, the motion is denied for lack of merit.

It is SO ORDERED.

Dated: New York, New York
July 14, 2006

                                                CHARLES S. HAIGHT, JR.
                                   SENIOR UNITED STATES DISTRICT JUDGE