**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

        -against-

IVAN RODRIGUEZ,

        Defendant.

No. 1:94-CR-0313 (CSH)

**APRIL 16, 2024**

---

## RULING ON CONSOLIDATED MOTION OF DEFENDANT IVAN RODRIGUEZ FOR REDUCTION OF SENTENCE UNDER 18 U.S.C. § 3582 [Doc. 933 and 945]

Defendant Ivan Rodriguez, currently incarcerated in a federal prison, has filed duplicative *pro se* motions for a reduction in his sentence. Rodriguez's motions are based upon 18 U.S.C. § 3582(c)(1)(A). *See* Doc. 933 and 945. Due to their repetitive bases, the Court addresses the motions as a singular, consolidated motion herein. The government opposes that motion. This Ruling resolves it.

### I

During the late 1980s and early 1990s, Rodriguez's co-defendant Angel Padilla, also known as "Cuson," was a co-leader with one George Calderon of a violent gang and racketeering enterprise called "C & C." The C & C gang extorted "rent" from local drug dealers on a several square-block section of the Bronx, New York City. Drug dealers made these payments to C & C to obtain the gang's permission to sell drugs in the affected area, and the gang's protection while doing so. The gang murdered sellers of drugs who did not make such payments to C & C.

A time came when Padilla and his partner Calderon had a falling out. The Second Circuit

1

said, in its opinion denying the direct appeal in this case: "In 1992, after a rift formed within C & C's ranks, Padilla hired Rodriguez, a professional hitman, to kill his onetime partner Calderon." *United States v. Padilla,* 203 F.3d 156,158 (2d Cir. 2000).  On May 21, 1992, Rodriguez, having agreed with Padilla on a charge for his services, donned a disguise and shot and killed Calderon.

The depredations of the C & C gang eventually resulted in a single indictment obtained by the United States Attorney for this District charging eighteen (18) individuals (including Padilla and Rodriguez) with a series of violent crimes.  After several individual pleas of guilty, and successful motions by other defendants for severance, Padilla and Rodriguez were tried together in a superseding indictment.  Following a twelve-week jury trial, on  May 16, 1995, the jury found Padilla and Rodriguez each guilty of all charges against them.

Padilla was convicted of crimes alleged in thirty-nine (39) separate counts of the superseding indictment.  Those counts consisted of racketeering and racketeering conspiracy; conspiracy to kidnap and kidnapping; conspiracy to commit murder; murder in aid of racketeering and attempted murder;  conspiracy to distribute heroin; extortion and conspiracy to commit extortion; and violations of the federal firearms statute, 18 U.S.C. § 924(c), in connection with certain of the other underlying offenses.

Rodriguez (the "professional hitman" Padilla hired to kill Calderon) was convicted in the same trial of conspiracy to commit murder, in violation of 18 U.S.C. § 1959(a)(5) (Count 41); the murder of Calderon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Count 42); and use of a firearm in furtherance of those crimes, in violation of 18 U.S.C. § 924(c) (Count 72).

On June 24, 1998, after the denial of Rodriguez's post-trial motions, this Court sentenced Rodriguez to: ten years imprisonment on Count 41; life imprisonment on Count 42, to run

concurrently with Count 41; and five years on Count 72, to run consecutively to Counts 41 and 42.

## II

Padilla and Rodriguez appealed their convictions. The Second Circuit rejected those direct appeals. *United States v. Padilla*, 203 F.3d at 162 (affirming "judgments of conviction as to Padilla and Rodriguez").

Thereafter, Padilla made a motion for habeas corpus relief. Padilla sought in that motion to vacate his sentence under 28 U.S.C. § 2255. The government opposed the motion. The Court considered and entered a "Memorandum and Order" on November 8, 2023 [Doc. 939], setting Padilla's habeas motion down for oral argument on December 7, 2023.

Rodriguez, Padilla's co-defendant at the trial, made the present habeas motion for reduction of his sentence. It is important to note that the relief Padilla sought, and the Court's reasoning with respect to it, have nothing to do with the merits of Rodriguez's motion at issue.

Padilla's motion challenged a number of his convictions under the firearms statute, 18 U.S.C. § 924(c). That challenge was based upon the retroactive effect of the Supreme Court's decision in *United States v. Davis*, 588 U.S. __, 139 S. Ct. 2319 (2019), which invalidated as unconstitutional the firearms statute's use of "the residual clause" in defining the statute's requisite "crime of violence." Under present law (applicable retroactively), a firearms conviction under § 924(c) is valid only if the underlying offense falls within the remaining "elements clause" of that section.

Padilla, who was convicted under § 924(c) in a wide variety of factual underlying settings (including some where Padilla's participation was clearly limited to that of a co-conspirator), claimed in his motion that many of those convictions must be vacated under *Davis* and its progeny. The government agreed to some of those counts but sought to retain others. To reiterate, all this is

irrelevant to Rodriguez's motion to reduce his sentence, which is the subject of this Ruling.

The Court decided Padilla's habeas motion in a Ruling [Doc. 946] filed on April 2, 2024, which granted Padilla's motion in part and denied it in part. The government was directed to settle an amended judgment, consistent with that Ruling, in the case against Padilla.

### III

Unlike Padilla, who was engaged one way or another in a number of violent gang acts, Rodriguez's charged conduct of conviction was limited to the firearm murder of George Calderon, Padilla's rival. The evidence adduced at trial entitled the jury to find that on May 21, 1992, Rodriguez donned a disguise and shot and killed Calderon. In consequence, Rodriguez's liability under the firearms statute falls squarely within the constitutionally valid "elements clause" of that act, 18 U.S.C. § 924(c)(3)(A). The questions regarding firearms act coverage raised by Padilla's situation do not arise in the government's case against Rodriguez.

It follows that the basis for Rodriguez's present motion to reduce his sentence is limited to 18 U.S.C. § 3582(c)(1)(A), an enactment commonly referred to as the "compassionate release" provision (although that phrase has been judicially created, and does not appear in the statute itself).[1] Section 3582(c)(1)(A)(i) authorizes a federal district court to reduce a defendant's term of imprisonment for "extraordinary and compelling reasons." That provision, which appears in the First Step Act of 2018, 132 Stat. 5194, 5239 (enacted December 21, 2018), amended § 3582(c)(1)(A) to allow a defendant to file a motion seeking compassionate release directly in federal court, after satisfying an administrative exhaustion requirement. Before the First Step Act,

---

[1] The United States Sentencing Commission has adopted this form of reference. Its Report of March 2022 is entitled: "*Compassionate Release*: The Impact of the First Step Act and COVID - 19 Pandemic" (emphasis added).

the statute permitted only the Director of the Federal Bureau of Prisons to receive and rule upon a motion by a prisoner to reduce a sentence.

In the case at bar, Rodriguez filed duplicative *pro se* motions for a compassionate release from prison [Doc. 920 and Doc. 933].[2]  The government responded to the first of Rodriguez's motions in a letter brief dated January 14, 2022 [Doc. 922], opposing the motion, and adhered to the expressions stated therein in opposing Rodriguez's second motion.  The government acknowledges that Rodriguez has exhausted his administrative remedies, and continues to oppose his motion (now considered in the singular) on the merits.

Rodriguez has asked the Court to appoint counsel to assist him on this motion for compassionate relief.  The issues are relatively straightforward, and I do not think counsel is necessary to represent the defendant or assist the Court.

Rodriguez also wrote a letter, dated November 14, 2023, to District Judge Stein, which was referred to me.  That letter purports to assert that the Court's sentence, passed upon Rodriguez in June 1998, was "illegal" in respect of the term of life imprisonment, since "the sentence was suppose [*sic*] to be 20 years for conspiracy to commit murder."  Rodriguez makes the same argument in a *pro se* motion [Doc. 945 ] for "reconsideration of a sentence," filed on January 23, 2024.[3]

There is no substance to this suggestion.  The jury convicted Rodriguez on Count 42 of the superseding indictment, which was for murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1).  That subsection specifies punishment "by death or life imprisonment, or a fine under

---

[2]  Doc. 933 essentially superseded or replaced Rodriguez's prior motion, Doc. 920.

[3]  In that additional "Motion for Reconsideration" of his sentence under 18 U.S.C. § 3582, Rodriguez makes another request to "reevaluate" his sentence "in light of his advanced age, with [his] medical connotations [sic]." Doc. 945, at 1.

this title, or both."  The Court sentenced Rodriguez in accordance with the statute.

## IV

The case therefore turns upon whether Rodriguez demonstrates a present  entitlement to a compassionate release from imprisonment.

A letter to the Court from Gladys Rivera [Doc. 934], Rodriguez's sister-in-law, dated January 31, 2023, states that Rodriguez is "75 years old," so he is now 76.  Ms. Rivera says that Rodriguez "suffers from heart disease and epilepsy."  She  writes in support of his request for a compassionate release "so that he can finish the rest of his life with his family."

While the sincerity of these familial desires cannot be doubted, there is no medical opinion evidence submitted to indicate that Rodriguez presently has a  "terminal medical condition," defined by Bureau of Prisons regulations as a life expectancy of "18 months or less."  *See United States v. Shakur*, 498 F. Supp. 3d 490, 496 (S.D.N.Y. 2020).  However, I will assume without deciding that Rodriguez's medical condition is that severely adverse.   That does not end the Court's "compassionate release" analysis.  The First Step Act, 18 U.S.C. § 3582(c)(1)(A), provides that a district court may reduce the term of a defendant's imprisonment "*after considering the factors set forth in section 3553(a) to the extent they are applicable*, if it finds that – (i) extraordinary and compelling reasons warrant such reduction." *Id.* § 3582(c)(1)A)(i)(emphasis added).

Thus the First Step Act protocol mandates my consideration of the 18 U.S.C. § 3553(a) factors, insofar as they are applicable to Rodriguez's case, before the statute authorizes his compassionate early release, even on the basis of demonstrated "extraordinary and compelling

reasons." *See United States v. Rodriguez*, 492 F. Supp. 3d 306, 313 (S.D.N.Y. 2020)[4] (Rakoff, *J.*) ("Having found extraordinary and compelling reasons for a sentence reduction, the Court must now determine whether, and if so how much of, a sentence reduction is warranted by those reasons *and is appropriate based on the Section 3553(a) factors* and applicable policy statement.") (emphasis added); *United States v. Ebbers*, 432 F. Supp.3d 421, 429 (S.D.N.Y. 2020) (Caproni, *J.*) ("After finding 'extraordinary and compelling reasons,' a court must then 'consider[ ] the factors set forth in section 3553(a).'") (quoting 18 U.S.C. § 3582(c)(1)(A)).

In *Shakur*, I had occasion to note: "It is generally held that a district judge's consideration of the § 3553(a) factors may preclude the reduction of a particular defendant's sentence, even though other circumstances would have constituted extraordinary and compelling reasons for doing so." 498 F. Supp.3d at 495 (collecting cases). *See also United States v. Agostini,* No. 00-CR-237 (VM), 2020 WL 6047362, at *2 (S.D.N.Y. Oct. 13, 2020) (Marrero, *J.*) ("However, even assuming Agostini has demonstrated 'extraordinary and compelling reasons' under Section 3582, the Section 3553(a) factors would still weigh against his release on balance.") (collecting cases).

The first § 3553(a) factors  the Court must consider are "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).  The Court is then directed to consider "the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; . . . . " *Id.* § 3553(a)(2).

While Rodriguez's conduct in prison appears to have been exemplary, and his distress and

---

[4] This "Rodriguez" is a different individual from the defendant of that name in the case at bar.

that of his family are manifest, I am commanded to consider the § 3553(a) factors.  Having done so, I find myself unable to grant Rodriguez a compassionate release in this case.  Angel Padilla sought Rodriguez's services to kill George Calderon.  Rodriguez, a known gunman, accomplished that mission by shooting Calderon to death in cold blood.  The nature and circumstances of that offense, and the characteristics of Rodriguez as the offender – the § 3553(a)(1)  factors – count against Rodriguez in the compassionate release calculus.  Furthermore, given the "seriousness of the offense," the need to promote "respect for the law," the provision of "just punishment for the offense," and the goal to "afford adequate deterrence to criminal conduct," the § 3553(a)(2) considerations under the "need for the sentence imposed" also do not weigh in Rodriguez's favor.

Under the circumstances revealed by the record, I am constrained to conclude that a compassionate release would not be appropriate for Ivan Rodriguez.  Rodriguez's habeas corpus motion for that relief [Doc. 933] is accordingly DENIED.

In light of this Ruling, for the foregoing reasons, Rodriguez's "Motion for Reconsideration" of his sentence under 18 U.S.C. § 3582 [Doc. 945], seeking "compassionate release" based on his "advanced age" and medical considerations, is also DENIED.

It is SO ORDERED.

Dated:    New York, New York
          April 16, 2024


                              /s/Charles S. Haight, Jr.
                              CHARLES S. HAIGHT,  JR.
                              Senior United States District Judge